## Hines v. The State.

1. An allegation in an indictment that the offence charged was committed in the "714th district, Georgia Militia," is sufficiently established by proof that the offence was committed in the "714th district, G. M." The initial letters "G. M." are commonly recognized and employed in this State as a proper abbreviation of "Georgia Militia." Indeed, the act under which the indictment was found itself makes use of this identical abbreviation. Acts of 1880-81, p. 591, sec. I.

2. It was unnecessary, in order to justify a conviction, that the State should show that the accused did not come within the exception, "That the provisions of this act shall not apply to any licensed physician in the regular practice of his profession, who may use liquors in making up his prescriptions, or compounding his medicines in cases of actual sickness." Proof of justification under

this exception was a matter which properly devolved upon the accused, it being within his power to readily and easily establish the truth in this regard. *Amos* v. *State*, 34 *Ga.* 531.

3. Due diligence was not exercised to procure the evidence alleged to have been newly discovered.  *Judgment affirmed.*

October 24, 1893.

Indictment for misdemeanor.  Before Judge HARRIS. Carroll superior court.  October term, 1892.

Bob Hines was charged with selling and furnishing malt and intoxicating liquor and intoxicating bitters in Carroll county, "in 714th district, Georgia Militia." He was found guilty, and moved for a new trial on the general grounds, and for newly discovered evidence. The motion was overruled.  At the trial one Mitchell testified that about the first part of 1892 or the latter part of 1891, he went to the defendant's barber-shop to be shaved; asked defendant if he knew where witness could get any whisky; defendant said there was some in Stewart's wagon-yard, that a man from Alabama had some blockade there.  Witness begged defendant to go and get him some whisky; defendant consented, and witness gave him twenty or twenty-five cents.  Defendant left, and in a short time returned with half a pint of whisky. He charged nothing for going.  Witness did not pay or offer to pay him anything for going.  This occurred "in 714th dist., Carroll co."  Ben Crider testified that on Sunday morning about the latter part of September, 1892, he and others were in his room "in Carrollton and in 714th dist., G. M., said county." He saw defendant on the street, and told him to go and bring some liquor up there.  After awhile defendant came in, set a bottle on the mantel and went out.  Witness did not pay defendant anything for the whisky or for going after it, nor did he know of any one else paying him.  He had no whisky in defendant's barber-shop on the night before; did not know whether any of the others who were in his

room had or not. Recalled, Crider testified it was not
true that a few nights or at any time before the furnishing
of this whisky by defendant to him and the others, he
had left any whisky in defendant's shop; he did not
know where defendant got the whisky from. One
Stewart testified that he was a member of the grand
jury at the October term when this indictment was
found; that in the case of Bill Benson the defendant
swore to the grand jury that he had never sold or fur-
nished Mitchell or Crider any whisky; and that he had
never carried or furnished them with whisky. The de-
fendant stated that the whisky he got for Mitchell was
some he bought for him in Stewart's wagon-yard from
a man who had it in a jug covered up in a wagon, and
who said he lived in Alabama. This man was soon
afterwards arrested for selling whisky. Two witnesses
gave testimony tending strongly to corroborate this part
of defendant's statement. As to the whisky he carried
to Crider, he stated that Crider had been in his shop a
night or two before the time he was told by Crider to
go and get him that liquor, and had left some there in
a bottle, and that when Crider told him to get him some
liquor he went to his shop, got the liquor Crider had
left there, carried it to his room, set it on the mantel
and left immediately. Several other boys were in the
room.

The newly discovered testimony was embraced in an
affidavit of Crider, that " on Sunday morning, 1892,"
from his room he saw the defendant on the street, called
him and told him to go to Bill Benson's and get him a
pint of liquor; and that he had talked to defendant's
counsel prior to that time, but never told them of that
fact. As to this testimony, the defendant made affida-
vit that when Crider was on the stand defendant thought
he was testifying about a different transaction from the
one he testified to, which was when Crider or some one

in his room called defendant to go to his shop and get some whisky left there the night before; that he was not thinking of the time Crider told him to go to Benson's and get whisky, as he thought the arrangement about the whisky obtained from Benson for Crider had been made beforehand; that he had entirely forgotten this, and never thought of it until after his trial, when Crider reminded him of it. There was an affidavit by defendant's counsel, that they had been diligent in the preparation of his case and did not know of the fact embraced in Crider's affidavit until after the trial; and an affidavit by W. I. Cobb, that Crider's character was good and he would believe him on oath.

W. D. Hamrick and W. F. Brown, by brief, for plaintiff in error. T. A. Atkinson, solicitor-general, and Edgar Watkins, by Atkinson & Hall, contra.